No. 13,094.

SUCCESSION OF ANGELA FORTIER, WIDOW OF PLACIDE BIENVENU.

SYLLABUS.

ON MOTION TO DISMISS.

1.  Whether a particular record presents sufficient *data* upon which an Appellate Court would be justified in avoiding or amending a judgment below, can only be known after it shall have heard the contention of the parties and made an examination of the transcript filed.    Insufficiency of the transcript may furnish ground for dismissal of an appeal after hearing on the merits, but not on a motion to dismiss *in limine*. (Brown vs. Land Co., 49th Ann., 1786.)

2.  The improper insertion in the transcript of appeal of documents and proceedings not filed in evidence on the trial of the cause, or of proceedings which occurred after judgment, furnishes ground for ignoring or rejecting the same, but not for dismissing the appeal.

3.  An appeal from a judgment by a third person legally entitled to an appeal therefrom as aggrieved thereby, is not a collateral attack upon it.    It is a direct method of reviewing the judgment authorized by law.    (Succession of Haley, 49th Ann., 1718.)

4. The appropriate time for the Supreme Court to examine into and pass upon: the effect of a third person's having in his motion for an appeal made admissions as to the *status* of the appellee which go to sustain the judgment of the District Court or upon the effect of such third person's having applied for and obtained a devolutive instead of a suspensive appeal, as to his having. a right of appeal, at all, will be after the hearing of the cause.

The Supreme Court is reluctant to dispose of the rights of parties upon questions· of law, raised *in limine* upon motions to dismiss appeals.

### ON THE MERITS.

The State of Louisiana acting through the attorney general as a third person· having an interest in the matter in dispute, occupies exactly the same position in the Appellate Court as any other litigant *quoad hoc* and must take the record as she finds it.

Notwithstanding the question in controversy is that of personal *status*, it is appealable by any person alleging an interest therein, either devolutively or suspensively. As such an appellant, the State does not occupy the attitude of attacking the *status* of an heir.

An acknowledged or legitimated natural child, entitled, as niece of a natural aunt, to inherit the latter's estate, being a descendant of a natural brother· who previously died.

There was no prohibition in the Civil Code of 1825, against a male of mixed· blood being united in marriage to a free woman of color.

ON APPEAL from the Civil District Court for the parish of Orleans. *Ellis, J.*

*Chretien & Suthon* for Public Administrator, Appellee.

*Lamar C. Quintero,* Attorney for Absent Heirs, Appellee.

*G. V. Sonial* and *Jerome Meunier* for Delphine Fortier, Sole Heir,. Appellee.

*E. Howard McCaleb* and *Arthur B. Lepold* for Mrs. Estelle Fortier.. Appelee.

*M. J. Cunningham,* Attorney General, (*Benjamin Rice Forman,* of Counsel), for the State of Louisiana, Appellant.

Submitted on motion to dismiss March 20, 1899.
Motion overruled April 3, 1899.
Submitted on the merits May 20, 1899.
Opinion handed down June 19, 1899.
Rehearing refused June 29, 1899.

The opinion of the court on motion to dismiss was delivered by NICHOLLS, C. J., and on the merits by WATKINS, J.

## ON MOTION TO DISMISS.

NICHOLLS, C. J.   Angela Fortier, widow of Placide Bienvenu, died in the city of New Orleans on the 8th of April, 1896.

On the 11th of that month Frank Zengel, Public Administrator for the Parish of Orleans, alleging that fact, and averring that she died intestate, leaving no heirs, but a vacant estate consisting of movables and immovables, and that it was his duty in his capacity as Public Administrator, to administer said succession as an administration of the same was necessary, prayed that seals be affixed upon the assets of the estate, that an inventory be made, and that in due course he be authorized to take the administration of the succession.

The usual order was given; the seals affixed; the inventory made, and in due course Zengel was authorized to administer the succession.

On the 27th of May, 1898, Delphine Fortier filed a petition in the Civil District Court, in which, after reciting the death of Angela Fortier, that she had died intestate, and leaving no ascendants or descendants, averred that she was the niece of the deceased and her only heir.

That she was the daughter of Edmond Gustave Fortier, a natural brother of the deceased, and the issue of the union of her said father with Caroline Delzay, petitioner's mother; that her father and mother lived publicly together as man and wife prior to petitioner's birth, and continued to live in the common dwelling, long after her birth and until 1862, when her father died; that her father always treated her mother as his wife, both in public and private; that he paid for petitioner's education, maintenance and support, and both in public and private openly treated petitioner as his daughter; that he often declared by writings executed by his own hand that he acknowledged her as his daughter, designating her expressly by name..

She averred that she was entitled to be recognized judicially by the court as the descendant of Edmond Gustave Fortier, the natural brother of the deceased, to the extent that she might be able to establish her right to the estate of her deceased aunt and obtain possession of same.

That an inventory of the property of the succession had been taken,

showing property of the estimated value of twenty-four thousand and seventy-two dollars, and that the public administrator was in charge of said estate.

That there was no need any longer of administration as the debts had all been paid.

She prayed that the public administrator and the attorney of absent heirs be cited; that after due proceedings she be decreed to be and recognized as the only child and daughter of Edmond Gustave Fortier, the natural brother of Angela Fortier, widow of Placide Bienvenu, and, as the descendant of said natural brother of the deceased, be decreed to be her sole and only heir; and entitled to the whole of her succession.

That the public administrator be ordered to file an account of his administration and to turn over to petitioner in her capacity as sole and only heir of the deceased, the residue of her estate, after payment of the debts and necessary expenses.

The public administrator filed a provisional account of his administration on September 13th, 1898.

On September 26th, 1898, this account was homologated so far as not opposed.

The District Court rendered judgment recognizing Delphine Fortier as the sole heir of Felicie Angela Fortier, widow of Placide Bienvenu, and decreeing that as such she be recognized as the owner and placed in possession of all the property movable and immovable, and effects of said deceased, particularly the property which was mentioned in the judgment.

This judgment was rendered on the 13th of November, 1898.

On February 9th, 1899, on motion of M. J. Cunningham, Attorney General, representing the State of Louisiana, and on his suggesting that the succession of Angela Fortier, widow of Placide Bienvenu, was a vacant estate falling to the State of Louisiana, for the benefit of the school fund; that said estate consisted of movables and immovables, but mostly of immovables, as appeared on the inventory; that there were no heirs capable of inheriting said succession; that the estate should have been adjudged to have fallen to the State of Louisiana; that Delphine Fortier was only the illegitimate and unacknowledged child of Edmond Gustave Fortier, a brother of deceased; that there was therefore error to the prejudice of the State in the final judgment rendered on November 28th, 1898, recognizing said

Delphine Fortier, as the heir of the deceased, and putting her in possession of the property; that there was likewise error to the prejudice of the State in the final judgment signed September 26th, 1898, homologating the account filed by the public administrator; it was ordered that an appeal be granted the State from both of said judgments, the one signed September 13th, 1898, and the other signed November 28th, 1898, returnable to the Supreme Court of the State, on the third Monday of February, 1899.

Appellee moved to dismiss the appeal for the reasons:

"1st.  That the certificate of the clerk of the Civil District Court and the record showed that the transcript does not contain all documents filed herein; that the certificate shows that the transcript was made pursuant to an order of the Attorney General, as would appear on page 115 thereof, which shows that "all little rules at the bottom of package can be left out;" thus showing a diminution of record at the instance of appellant.

2nd.  There was error in the appellant ordering the clerk of the Civil District Court to embody in the transcript any evidence, documents or proceedings, that occurrred after the judgment appealed from was rendered; or which were not introduced and filed in evidence at the trial of the cause that culminated in the judgment appealed from, and consequently there should be stricken from the record all proceedings and documents in the matter of Estelle Fortier, widow of Darius Demazilliere, against appellee, herein embodied in the transcript.  Pages 96 to 114.

That for the same reason there should be stricken out of the transcript "the four records in valut in' this matter" which attorney for appellant wrongfully assumes properly belongs to No. 18,976, 2nd District Court, ("Trans. 115"), and consequently Records No. 56,388 and 56,399, which have been wrongfully embodied in the Transcript from page 125 to 143, should be stricken out, because said records were never introduced and filed in evidence in this case as appears per note of evidence, page 43 of the Transcript, it appearing only that Record No. 18,976 of the Second District Court was offered in evidence.

That appellant, being a third party appealing, had no right after judgment to introduce new evidence.

3rd.  The State of Louisiana is without any interest herein.

It cannot collaterally attack by appeal as a third person; the judg-

ment recognizing the *status* of appellee. The said judgment not having been suspensively appealed from, has become final and executory, and cannot be disturbed by a devolutive appeal, and an attack on the same, and on the capacity of appellee as niece of the deceased, can only be brought by a relation and not by the State of Louisiana.

4th. The State of Louisiana was apprised long prior to the rendition of the judgment appealed from, through its proper officer, of the pendency of the suit which appellee had instituted herein, as fully appears per statements of the Attorney General and of the attorney of the public administrator annexed to appellee's motion. Subsequent to said notice and knowledge the judgment was obtained contradictorily against the public administrator and attorney of absent heirs, and the State of Louisiana, on account of her *laches* in not seasonably intervening or taking a suspensive appeal from the judgment, is concluded by same and is estopped to question by a devolutive appeal the judicial acknowledgement of appellee as niece of the decedent.

5th. The motion of appeal shows no cause of action; said motion and the order of the Attorney General to the clerk of the Civil District Court admit that appellee is a daughter of Edmond Gustave Fortier, a brother of decedent herein, and said judicial recognition on the part of the State bars recovery.

To permit such an attack as herein attempted would be against public policy; especially as it appears that rights of third parties have accrued since the final judgment."

Whether a particular record presents sufficient data upon which an appellate court would be justified in avoiding or amending a judgment below, can only be shown after it shall have heard the contention of the parties and made an examination of the transcript filed.

Insufficiency of the transcript may furnish ground for dismissal of an appeal after hearing on the merits, but not on a motion to dismiss *in limine*. (Brown vs. Land Co., 49 Ann., 1738.)

The improper insertion in the transcript of appeal of documents and proceedings not filed in evidence on the trial of the cause or of proceedings which occurred after the rendition of the judgment appealed from, furnishes ground for ignoring or rejecting the same, but not for dismissing the appeal.

An appeal from a judgment by a third person legally entitled to an appeal therefrom as aggrieved thereby, is not a collateral attack upon it.

It is a direct method of reviewing the judgment authorized by law. (Succession of Haley, 49th Ann., 1718).

The best and most appropriate time for us to examine into and pass upon the effect of a third person's having in his motion for an appeal made admissions as to the *status* of the appellee which go to sustain the judgment of the District Court or upon the effect of such third person's having applied for and obtained a dovolutive, instead of a suspensive appeal, or to his having a right of appeal at all, will be after the hearing of the cause.

If the effect of such acts is to bar an appeal or a recovery as claimed by the appellee, we will so announce on the final disposition of the cause.

We are reluctant to dispose *in limine* of the rights of parties on questions of law, raised on motions to dismiss.

This statement covers the attempt to have the appeal dismissed upon the ground that no one but a relation can question the legal right of the appellee to have inherited from the deceased, Angela Fortier, and that the State has no legal interest entitling it to appeal.

The succession of Angela Fortier was opened as a vacant succession and went as such under the administration of the public administrator.

It closed under a judgment recognizing a certain party as an irregular heir and as such entitled to receive all of its property.

To the proceedings leading up to the recognition of this party as an irregular heir and altering the *status* of the succession from a vacant to an irregular succession, neither the State nor the school board was made party.

The State claims that the succession is in fact a vacant succession, and that by reason of that fact it had legal rights in the premises of which it could not be deprived by what *quoad* it were *ex parte* proceedings.

These are legal questions which we prefer to hear fully argued on the merits by the parties claiming rights.

We are of the opinion, for the reasons assigned, that the motion to dismiss *in limine* should be denied and it is so ordered without prejudice.

MONROE, J., takes no part, as he was not a member of the court when the case was submitted.

ON THE MERITS.

WATKINS, J.   This cause was recently before this court on a motion to dismiss the appeal, and our opinion thereupon gives a fair statement and synopsis of the pleadings, and we refer to them for particulars.

Therefrom we ascertain that Angela Fortier died in the city of New Orleans, on the 8th of April, 1896, and the public administrator undertook the administration of her succession as a vacant estate, and caused an inventory of her property to be taken; and that Delphine Fortier made an appearance in court, alleging that she was the niece of the deceased, and as such, her sole heir at law, and entitled to her property and estate.

The following is an extract from our opinion, viz:

"That she was the daughter of Edmond Gustave Fortier, a natural brother of the deceased, and the issue of the *union* of her said father with Caroline Delzay, petitioner's mother; that her father and mother lived publicly together as man and wife, prior to petitioner's birth, and continued to live in the common dwelling long after her birth, and until 1862, when her father died.

"That her father always treated her mother as his wife, both in public and in private; that he paid for petitioner's education, maintenance and support, and, both in public and private, openly treated her as his daughter; and that he often declared, by writings executed by his own hand, that he acknowledged her as his daughter, designating her expressly by name."

That in her petition she asked that she be recognized judicially by the court as the descendant of Edmond Gustave Fortier, the natural brother of the deceased, Angela Fortier, and placed in possession of her property and estate (which was valued in the inventory at $24,072). as her sole heir at law.

Upon her application the public administrator filed an account, and same was homologated in so far as not opposed.

Our opinion further states, that "the District Court rendered a judgment recognizing Delphine Fortier as the sole heir of Felicie Angela Fortier, deceased, widow of Placide Bienvenu, and decreed that she be recognized as the owner and placed in possession of all the property, movable and immovable, and effects of said deceased—particularly the property which was mentioned in the judgment."

99

That judgment was rendered on the 18th of November, 1898, and on the 9th of February, 1899, the attorney general applied for and obtained an order of appeal therefrom; and, also, from the judgment homologating the account of the public administrator on the 18th of September, 1898.

The grounds upon which the attorney general, representing the State of Louisiana, prosecutes said appeal are, that the estate of Angela Fortier was and is vacant because she left surviving her no heir capable of inheriting same; "that Delphine Fortier was only the *illegitimate and unacknowledged child of Edmond Gustave Fortier, a brother of deceased;*" and that, in consequence of those facts, the estate of the deceased was inherited by the State as irregular heir, for the use and benefit of the school fund.

Appellee moved for the dismissal of the appeal upon several grounds, and amongst them the following, as stated in our opinion, viz.:

"3rd. The State of Louisiana is without any interest herein.

"It can not, collaterally, attack by appeal, as a third person, the judgment recognizing the *status* of appellee.

"That said judgment not having been suspensively appealed from, has become final and executory, and can not be disturbed by a devolutive appeal; and that an attack on the same, and on the capacity of appellee as neice of the deceased, can only be brought by a relative, and not by the State of Louisiana, etc."

"5th. The motion of appeal shows no cause of action. Said motion and the order of the attorney general to the clerk of the Civil District Court admit that appellee is a daughter of Edmond Gustave Fortier, a brother of the decedent herein; and said judicial recognition on the part of the State bars recovery."

After having made the foregoing statement of the purport of the motion to dismiss as applicable to the pleadings, judgment, and petition for appeal, our opinion expresses the following view thereof, viz.:

"The best and most appropriate time for us to examine into and pass upon the effect of a third person's having, in his motion for an appeal, made admissions as to the *status* of the appellee which go to sustain the judgment of the District Court, or upon the effect of such third person's having applied for and obtained a devolutive, instead of a suspensive appeal, or to his having a right of appeal at all, will be upon the hearing of the same.

"If the effect of such acts is to bar an appeal in a recovery as .claimed by the appellees, we will so announce on the final disposition of the cause.

"We are reluctant to dispose *in limine* of the rights of parties on questions of law, raised on motions to dismiss.

"This statement covers the attempt to have the appeal dismissed upon the ground that no one but a relative can question the right of the appellee to have inherited from the deceased, Angela Fortier, and that the State has no legal interest entitling it to appeal."

The foregoing extracts from our opinion are reproduced for the purpose of disclosing the present standing of the litigation, with the view of elucidating the question that is presented for decision.

The State of Louisiana, through the attorney general, as a third person having an interest in the matter in dispute—the estate of Angela Fortier—applied for and obtained an order of devolutive appeal, within twelve months from the rendition and signing of the respective judgments appealed from; and as such appellant she occupies exactly the same position in the appellate tribunal as any other litigant q*uoad hoc; i. e.,* she must take the record as she finds it, *ipsissimis verbis,* in the court of first instance.

As to what her interest in prosecuting an appeal may be, can only be determined on the merits; and in the same category are the questions (1) as to whether she has a legal right, or interest, to prosecute an appeal, at all; (2) or whether the judgment is appealable in character, as having decided a question of personal *status* and, as such, is immediately operative, irremediable and effective *eo instanti.*

In our view, there is no reason why a devolutive appeal can not be resorted to just as appropriately and as effectively in such case as a suspensive appeal; and the plain inference to be drawn from the statement of appellee's counsel is that a suspensive appeal might have been taken within the proper delay.

That being the case, the reason must be, that the judgment in such case does not become operative during such delay; and upon that theory the argument advanced in support of the proposition is completely answered.

Such a judgment is either appealable or non-appealable; and if appealable at all, there is no reason why a devolutive appeal should not be efficacious.

It appears that the judgment which was relied upon in Cahalerro vs.

Maduel, 26 Ann., 112, was decided on appeal to this court; and that in State *ex rel.* Pugh vs. Judge, 33rd Ann., 1381, was, likewise.

In our opinion, an appeal can not be fairly considered as an attack upon either the judgment appealed from, or upon the title it recognizes, or upon the *status* it establishes.

An appeal is not a suit, but an "act by which one of the parties to a suit has recourse to a superior tribunal, in order to have the judgment of an inferior court corrected." C. P., 564.

Beaird vs. Russ, 34th Ann., 315.

Consequently the State, as an appellant, does not occupy the position before this court of making an attack upon the *status* of Delphine Fortier as that of a legal heir of Angela Fortier, deceased, in the sense that she is attempting, by testimony *de hors* the record to destroy, or overthrow the same; on the contrary, we understand her position to be, simply, that the record, as it is made up in the District Court, and as it stood at the time the judgment appealed from was rendered and signed, fixing her *status as* that of a legal heir of the deceased, either did *not* contain sufficient evidence to justify that decree, or *did* contain evidence which should have constrained the judge *a quo* to have arrived at a different conclusion.

It is to this situation alone that our examination and decision must be exclusively directed.

We would not feel justified in examining and considering as parts of the record any document or proceding which was not filed in evidence in the court of the first instance on the trial of the cause; or any proceedings which occurred after the rendition of the judgment appealed from.

The State claims as irregular heir, and that claim is founded, exclusively, upon the theory that the evidence in the record fails to establish the fact that Delphine Fortier is the legal heir of Angela Fortier; or that a proper application of the priciples of law applicable to the proven facts in the case demonstrates that she did not possess the quality of an heir.

The question presented for consideration may be considered from two standpoints; (1) that of the claimant, Delphine Fortier, as it appears in the record prior to the signing of the judgment appealed from; (2) and from that of the State as appellant, subsequent to the order of appeal.

## I.

For the purpose of accuracy, the pleadings should be re-stated. The petition of Delphine Fortier to be recognized as heir of the deceased, Angela Fortier, filed May 27th, 1898, declares, that her aunt died intestate on the 8th day of April, 1898, in the City of New Orleans, without leaving any ascendents or descendants, or collateral relations. That she is the niece of the deceased, and her sole and only legal heir, being the daughter of Edmond Gustave Fortier, natural brother of said deceased, and the issue of the union of her said deceased father with Caroline Delzay, petitioner's mother. That both her father and mother lived publicly together as man and wife prior to the birth of your petitioner, and continued so to live in the common dwelling long after the birth of your petitioner, and until 1862, when her father died. That her said father always treated petitioner's mother as his wife, both in public and in private; that he paid for petitioner's education, maintenence and support, and, both in public and in private, openly treated petitioner as his daughter.

That your petitioner's father often declared by writing, executed by his own hand, that he acknowledged her as his daughter, designating her expressly by name.

She represents "that she is entitled to be recognized, judicially, by this court, as the descendant of Edmond Gustave Fortier, the natural brother of the deceased, to the extent that she might be able to establish her rights to the estate of her said deceased aunt, and obtain possession of the same." .

To this petition the public administrator filed a preliminary exception of no cause of action, and that the allegations of her petition were vague and indefinite; and, further, that there are annexed to her petition no written proofs upon which she founds her claim to heirship, nor does she set forth in what form the alleged acknowledgment was made, whether verbally or in writing.

These exceptions were fixed for trial and were, by the judge, subsequently overruled.

Thereafter the public administrator filed a provisional account, and caused same to be homologated, so far as not opposed.

Thereafter he filed an answer to the claim of Delphine Fortier, and plead a general denial, and specially put at issue the relationship of plaintiff to the deceased, "and prayed that plaintiff be held to strict proof."

On the issues thus joined, the testimony of many witnesses was taken. That of one was to the effect that he knew Gustave Fortier and Caroline Delzay, and that they lived together as man and wife; and that he knows the claimant, Delphine Fortier, and that Gustave Fortier called Delphine Fortier, by name, as his daughter. That he treated her as his child. That he and Caroline Delzay were living together in the same house, on the same street, and about three doors from that of witness.

That Caroline Delzay was known in the community as Madame Gustave Fortier. That he was intimate with the entire family. States his age to be 70.

States that Delphine was commonly known as Delphine Fortier in the neighborhood, and among the people who knew the family.

That of another is that he knew Gustave Fortier and Caroline Delzay, and their daughter Delphine. That they always treated her as their daughter. That he always called her such. That she was generally known in the neighborhood to be such.

That of another is that he knew the parties. That he was a servant and worked for Mr. Fortier; and that he openly and publicly treated Delphine as his daughter. That he sent her to school, paid her bills, and that he treated Caroline Delzay as his wife; and that they and their daughter lived in the house together as one family; was intimate with them for about ten years.

That of another witness, aged 84, states that she knew Gustave Fortier very well, and that he was her cousin. That she knew Caroline Delzay. That they lived together in the same house, immediately opposite her on the same street. That they lived together as man and wife openly and publicly. That he treated her as his wife, both before and after the birth of Delphine. That Delphine Fortier is the daughter of Gustave Fortier and Caroline Delzay.

This witness makes the following statement:

"I visited the house very often before the birth of Delphine, and also after the birth of Delphine, visited the house one or two days after the birth of Delphine, when Caroline Delzay was in bed confined for Delphine. Gustave Fortier presented me to Delphine as his daughter, a day or two after the birth of Delphine.

"He always treated Delphine as his daughter, and played with her and nursed her as an affectionate father, and told her that Delphine was his only child."

"Q. Do you know if Angela Fortier has left any closer kindred than Delphine Fortier?

"A. There is no other relative, but Delphine, that is left, as all the brothers and sisters of Angela Fortier are dead.

"Q. Are there any nephews or nieces living?

"A. No; there is not.

"Q. Do you know, intimately, the whole family?

"A. Yes, sir; the whole family.

"Q. Did you know Henriette Milon, mother of Angela Fortier and Rosella and Henriette Fortier?

"A. Yes, sir.

"Q. Then you are positive that Delphine Fortier is the daughter of Gustave Fortier, and the niece of Angela Fortier, the deceased?

"A. Yes, sir; I am positive of that fact, because when Delphine was a little girl, she went to Angela's house, and she thought well of the child.

"Q. Did Angela Fortier treat Delphine as her niece?

"A. Yes, sir; Angela Fortier treated her as her niece.

"Q. Were you about the same age as Gustave Fortier?

"A. Yes, sir; two or three years difference.

"Q. Did you know the other members of Gustave Fortier's family?

"A. Yes, sir; I knew them. My mother used to have a house out at the lake, and Gustave and his other brothers would come out to visit us. They were my cousins, and I knew them all."

*  *  *  *  *  *  *  *

"Q. Where did Gustave live before he got in with Caroline?

"A. Before he took Caroline he was living on Burgundy street, between Dumaine and St. Ann.

"Q. Where did he live after he took Caroline?

"A. After he took Caroline; I can't tell you exactly where they lived. I know it was near the cemetery, not far from Bienville.

"Q. Was he married to Caroline Delzay?

"A. They were not married, but the report was that just before Gustave died a religious ceremony was performed.

"Q. How are you related to Gustave Fortier?

"A. I was related to Gustave Fortier and his family on my mother's side; my mother was a first cousin to Gustave and Angela Fortier, to-wit—Henriette Milon."

That of another witness was that she knew Gustave Fortier, and

that he was the brother of Angela Fortier, widow of Bienvenu; and also of Henriette and Rosella Fortier.

That she knew Caroline Delzay to be the mother of Delphine. Said she was 76 years of age when she gave her testimony. She knew that Gustave Fortier and Caroline Delzay lived in the same house as man and wife for many years, both before and after the birth of Delphine.

The witness makes the following statement:

"The mother of Delphine Fortier was my mother's friend, and we were raised together. When Caroline fell sick with childbirth, with Delphine, Caroline Delzay sent for my mother,. by Gustave Fortier; but my mother could not come, and I went with Gustave to find out what she wanted. I stayed and assisted in the confinement, and in the evening, when we got through, Gustave took me back home to my mother."

Another witness states that she knew Gustave Fortier and his three sisters, and that she very often visited the house of Angela Fortier in company with Gustave Fortier and his daughter Delphine. That Gustave Fortier openly and publicly treated Delphine as his daughter, and that Angela Fortier frequently recognized Delphine as her niece.

She makes this statement, to-wit:

"When I was the next door neighbor, I knew Gustave Fortier and Caroline Delzay and Delphine Fortier. I was living in the same house with the other two young girls who were daughters of Caroline Delzay, but not by Gustave Fortier."

She states that Delphine always called Gustave papa; that he always spoke of Caroline Delzay openly and publicly as his wife, and called her 'my wife.'

"Q. You visited them at the house as a friend of Delphine Fortier?

"A. Yes, sir; the door communicating between the two houses, my house and the house of Gustave Fortier, was open, and I visited them, and was very intimate with them.

"Q. Do you know whether Gustave Fortier sent Delphine to school?

"A. Yes, sir; I knew him to send Delphine to school, and he paid for her education; and he clothed her, fed her, and treated her entirely as his daughter."

That of another witness, who states her age to be 85, is that she is the wife of one Bodin, who taught school in 1844 and 1845, near

Robertson street, and that Delphine Fortier attended his school. She is shown two receipts, signed by her husband, for the payment by Gusave Fortier of the tuition of Delphine, and recognized the signature as the handwriting of her husband.

One of said receipts is of the following tenor:

"Received from Mr. G. Fortier $2.00, for one month's schooling for his daughter, Delphine."

She states that Delphine was known in school, by all, as Delphine Fortier, the daughter of Gustave Fortier.

That of another witness, Francoise Mortimer, states that she lived on Laharpe, between Prieur and Roman. That she was about the same age as Gustave Fortier.

Her statement is as follows:

"I belonged to Madam Rosella, his sister, and Gustave stayed with Caroline, and when he stayed with her, they had a child, and I used to comb the whole family. And Gustave says: 'Come and see my fine baby.'"

She states that, before he died, he and Caroline were married.

"Q. Were you there?

"A. Yes, sir; because I stopped combing to go there. I was the hair dresser for the whole family.

"Q. Who else was there?

"A. I don't know the young ladies' names. There were two of them. Two of these died.

"Q. By whom were they married?

"A. I don't know the preacher what married them.

"Q. A priest?

"A. I did not know the priest. They had to take the sacrament. They could not get married without taking the sacrament.

"Q. You heard that?

"A. Yes, sir.

"Q. When the priest told them that?

"A. Yes, sir.

"Q. Now, what I want to know is, did Gustave Fortier and Caroline Delzay live together?

"A. Yes, sir; they lived together, same as wife and husband, coming and going.

"Q. Did they live together as man and wife before the birth of Delphine?

"A.   Yes, sir; before the birth of Delphine.

"Q.   A long time before?

"A.   A long time before.

"Q.   You used to visit that house?

"A.   Yes, sir.

\*        \*        \*        \*        \*        \*        \*        \*

"Q.   They were living together as man and wife in the same house?

"A.   In Caroline's house; as she sold the house which belonged to her; it was then he took her in his house, and it was there he died; and I stayed with him to the last, and saw him pass away."

She says that Angela Fortier was the sister of Gustave Fortier.

"Q.   Did you comb the hair of Caroline Delzay shortly after the birth of Delphine?

"A.   Yes, sir.

"Q.   Was she in bed then?

"A.   Yes, sir; she was not in bed entirely; she would get up and sit up a little bit, and then go back to bed again.

"Q.   How long after the birth of Delphine did you comb her hair?

"A.   She would send for me once in a while.

"Q.   Was it a week after the birth of Delphine?

"A.   Yes, sir.

"Q.   About a week after?

"A.   Yes, sir.

"Q.   When you visited that house, shortly after the confinement of Caroline Delzay, with Delphine, did you see Gustave Fortier there?

"A.   Yes, sir.

"Q.   What did he tell you?

"A.   He told me to come and see the fine baby he had.

"Q.   Was that this same Delphine that is now claiming this succession?

"A.   Yes, sir; that is the same Delphine; the same child.

"Q.   He told you it was his daughter?

"A.   Yes, sir; and it was his daughter too.

"Q.   You heard Gustave Fortier call Delphine Fortier his daughter?

"A.   Yes, sir.

"Q.   Did he send her to school?

"A.   Yes, sir.

"Q.   Do you know where; what was the name of the school?

"A.   I don't know the name of the school, but I know he sent her to school.

"Q.   Did he pay for her maintenance and support?

"A.   Yes, sir.

"Q.   Did you ever hear Angela Fortier and Rosella Fortier call Delphine by any name?

"A.   No, sir; they just said she is my niece.

"Q.   Both of them?

"A.   Yes, sir.

"Q.   Both of them stated that Delphine was their niece.

"A.   Yes, sir.

"Q.   You heard that often?

"A.   Yes, sir; I heard that often; Delphine my niece.

"Q.   Now, can you tell us if you know the whole family, brothers and sisters of Gustave Fortier?

"A.   Yes, sir; there was Gustave, Felix, Baboth and Valcour, that is all the brothers.

"Q.   Now, the sisters?

"A.   Angela, Henriette, and Rosella.

"Q.   Three sisters.

"A.   Yes, sir; three sisters .

"Q.   Any of them living now?

"A.   No, sir; they are all dead; Angela was the last one.

"Q.   Did they leave any children?

"A.   None of them left any children.

Madam Rosella was not married.   They were all single except Mrs. Angela.

"Q.—Did she leave any children?

"A.—No, sir.

"Q.—Who left any children?

"A.—The only one on earth who left any children was Gustave, and that was Delphine.

*        *        *        *        *        *        *        *

"Q.—Now, you talked about Gustave Fortier and Caroline Delzay getting married; that was how long before Gustave died?

"A.—Well, it was two nights before his death; he was getting lower and lower you know, and he must see the priest before he died.   You know it was no more than right, and the priest came and saw him, and said he could not give him absolution until he had married; which

was no more than right, and I was there when they got married, and when he died."

There were other witnesses—all of them people of great age—who stated that they knew Gustave Fortier, Caroline Delzay and Delphine, their daughter, and make much the same statement in regard to them and their relations and life as that which has been detailed from the testimony of other witnesses.

Delphine Fortier was herself sworn as a witness, and states that she lives on Ursuline street, between Marais and Villere, and that Gustave Fortier was her father and Caroline Delzay her mother. That Gustave Fortier always treated her as his daughter, ever since she can remember. That Gustave Fortier paid for her education and support. That she remembers attending Mr. Bodin's school, on Robertson street; and that her father attended her to school. She recognizes a picture which is annexed to the record as that of her father. That she remembers taking her first communion, and that Gustave Fortier made her a present of her first communion book, and that there was an inscription written therein, "To My Dear Daughter Delphine Fortier. From Her Father, Edmond Gustave Fortier."

But that book was destroyed by fire on Claiborne street, where they lived about fifteen years ago. That everything she had was burned in that fire. That amongst other things she had many letters written by her father, in which he addressed her as daughter, or his "Dear Daughter Delphine;" but those letters and other documents were destroyed by fire.

"Q.—Do you remember when your father died?

"A.—Yes, sir; I remember when my father died.

"Q.—Do you remember the circumstances immediately preceding his death or sometime previous to his death?

"A.—Yes, sir; when he was sick and they asked him if he wanted to see a Catholic priest, he said 'yes,' and they sent for a priest; and when the priest came, my two aunts, Angela Fortier and Henriette Fortier, sisters of my father, were both in the parlor. When the priest came, he asked my father whether he was married, and he stated 'no'; and the priest asked him whether he wanted to be converted, and he said 'yes'; and the priest asked him whether he had any children, and he stated 'only one daughter', which was myself, and whom he pointed out to the priest.

"The priest then asked him if he wanted to recognize me as his

daughter, and he said 'yes'; and the priest then confessed him; and he stated to him that he could not absolve him without his being married; and then the priest married them.

"Q.—Can you state to us if there were any witnesses to that marriage?

"A—Certainly, sir; there was Mrs. St. Hubert, Mrs. Legendre and the old servant.

"Q.—What was her name?

"A.—Francoise Mortimer.

"Q.—Is it the same Francoise Mortimer who testified in this case?

"A.—Yes, sir; the same.

"Q.—What has become of Mrs. St. Hubert and Mrs. Legendre?

"A.—Both of them are dead.

"Q.—And you were present?

"A.—I was also present at that marriage."

The foregoing extracts from the testimony of the witnesses clearly and fully establish the allegations of plaintiff's petition, and show beyond all controversy, that Delphine Fortier is the child of Gustave Fortier and Caroline Delzay. That her father and mother lived as man and wife for many years both prior and subsequent to the birth of Delphine. That, although they had not been married, they lived as married persons in a common domicile to the knowledge of the people of the neighborhood, and the community at large; and that a few days before his death a Catholic priest performed the marriage ceremony between them in the presence of several persons, and that of Delphine; and that he admitted to the priest that Delphine was his daughter, and that he desired to acknowledge her.

That the priest informed him that he could not give him absolution unless he was first married, and desired to know of him whether he wished to marry; and he said, he did.

The proof fully shows, also, that Angela Fortier was the natural sister of Delphine's father, Gustave Fortier; that she was married, and died, without issue, at her domicile in the city of New Orleans, in 1898, where her succession was opened by the appointment of a public administrator.

It is with relation to the foregoing state of facts that we must examine and determine the right of Delphine Fortier, as a natural niece, to inherit the estate of Angela Fortier as her natural aunt.

The proof makes it clear that there is no other heir apparent; and

that if Delphine is not entitled, as legal heir, the State is entitled thereto as an irregular heir.

It must be borne in mind that the succession of Angela Fortier is at stake, and the question is of the right of Delphine Fortier, as her niece, to inherit in 1898; not that of her right to inherit the succession of Gustave Fortier, her father, who died in 1862.

The contention of her counsel is; that a natural child may inherit from her natural aunt in preference to the State, although she might never have been authentically acknowledged by her parents.

Or, in other words, that a natural child might have been, in 1862, debarred from inheriting from her natural father, without being debarred, in 1898, from inheriting from a natural aunt.

That the estate before the court being that of Angela Fortier, it is an altogether different subject matter from that of the estate of Gustave Fortier.

True it is that Angela Fortier is the natural sister of the deceased, Gustave Fortier, and that she claimed and was awarded a share in his estate; but that share of the property was absorbed into her estate more than thirty years prior to her death.

Counsel for plaintiff claims that not only is that so, but that the claim of Delphine Fortier to inherit as the natural niece of Angela Fortier was just as good as that of Angela Fortier as natural sister, to inherit from Gustave Fortier, as her natural brother.

The claim of Delphine Fortier is, further, that she is the natural child of Gustave Fortier, and that, as such, she is an heir of her father's natural sister, Angela Fortier; and that she traces her heirship, through her father, as a collateral of her aunt.

That, being a natural child of Gustave Fortier, she had the legal *status* of an heir in 1898 of her natural aunt, independent of the relations which existed between her father and mother, prior to 1862, when he died.

That whether this proposition be absolutely true or not, she has the right at least to inherit, to the exclusion of the State as irregular heir.

The provisions of the Code upon which plaintiff bases her claim as an heir, is as follows:

"If the father and mother of the natural child died before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants." Civil Code of 1825, Art. 917.

That is to say, if the father and mother of Angela Fortier (a natural child) died before her, her estate passed to her brothers and sisters, (and there being none), to their descendents; (Delphine Fortier) the only one.

In order to illustrate the precise situation under which she claims as the heir of her natural aunt, counsel cites the following provision of the Code under which she claimed as natural child of her father, to-wit:

"Natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants, nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the State." Article 913 of the Civil Code of 1825.

That is to say, a natural child inherits from his natural father only, when he has acknowledged him, and then only, in case he has left no descendants, nor ascendants, nor collateral relations; but that the natural child inherits from his natural uncle or aunt, without having been so acknowledged. That Delphine was deprived of her *father's* succession by collaterals; and is entitled to inherit as the *descendant* of a *collateral* of *the deceased.*

Therefore, the argument which is pressed upon our attention is, that notwithstanding Delphine Fortier may have been excluded from inheriting any portion of her father's estate, under Article 913, she is entitled to inherit from her natural aunt, under Article 917 of the Code of 1825. It is with these two articles that we are particularly called upon to deal.

Under the proof it is clear that the father and mother of Angela Fortier are dead, and that she was their natural child, and that her estate can not pass to her natural brothers and sisters, as she has none —they having died.

It is very plain that Delphine Fortier as the natural child of Gustave Fortier, the brother of Angela Fortier, is his descendant, and the only one—all others having died.

The question, therefore, is, does she inherit the estate of her aunt as her natural neice and *descendant* of her natural brother?

Counsel for the State insists that the word descendants, in Article 917, relates to regular descendants or legitimate relations; but that interpretation can not be placed upon that word, because the language of the article does not justify that interpretation.

The word descendants would not have been employed in that article had the framers of the Code intended it to be so considered, because a previous article declares that "the law does not grant any right of inheritance to natural children to the estate of legitimate relations of their father or mother." C. C. of 1825, Article 921.

All these articles treat of legal and irregular successions, and of the rights of legal and irregular heirs and natural children, and them alone.

In Lange vs. Richoux, 6 La., 568, a case is stated of the niece claiming to inherit the succession of her natural aunt, a free woman of color, under Article 917 of the Code of 1825—the one on which plaintiff relies in this case—and of which claim the court said:

"It is contended by the defendant that the word *such* in the article first recited, refers to natural children as described in the preceding article, as being acknowledged by the parents in the mode pointed out by the Code, either by notarial act or the register of births or baptism; that Gabrielle and Marie Jeanne can not be regarded as natural sisters, and entitled to inherit from each other, unless both were acknowledged by their common parents."

Commenting on that proposition, the court say:

"That the evidence shows Gabrielle and Marie Jeanne to have been both natural children of Catherine, according to the Spanish law in force before the promulgation of the Code, we have no doubt. The 11th law of *Toro* required that, to be regarded as natural children, there should have existed, at their birth or conception, no legal impediment to the marriage of the parents, and that they should be acknowledged by the father, dispensing, however, with any formal acknowledgment when the mother lived in the same house with the reputed father, and was his sole concubine.

Under this law it was considered by the ablest commentators, that proof of birth was equivalent to acknowledgment on the part of the mother; and proof of co-habitation with the mother as sole concubine tantamount to an acknowledgment of paternity.

"But it is urged that the Code has introduced a new rule on this subject, and that without the formal acknowledgment, by notarial act or in the baptismal register, the natural child is without capacity to inherit."

After commenting upon other articles of the Code, the court say:

"The words used in Article 221 are not prohibitive, and so far from

declaring that a declaration before a notary shall be the only proof permitted, the Code expressly permits other methods of proof, both of paternal and maternal descent, without any restriction as to the purpose for which it may be allowed.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

We are, therefore, of opinion that Marie Jeanne and Gabrielle are proved to have been natural sisters, and capable of inheriting from each other, and that plaintiffs are entitled to recover unless the defendant shows herself descended from Gabrielle and capable of taking the inheritance at the time the succession was opened."

The foregoing is the only case we have been able to find, after diligent examination, which is directly applicable to the instant case; but the same principle is recognized in Montegut vs. Bacas, 42nd Ann., 158, in which the following language is employed:

"Lawful collaterals only can inherit, except where the law, under certain conditions, has favored the natural brothers and sisters and designated them as heirs, and directs the estate of the natural brother or sister, deceased, shall pass to them or their descendants. C. C. 923 (917.)

A natural child can not have an illegitimate ancestor and collateral relatives capable of inheriting from him other than the brother and sister, or their descendants, under the conditions prescribed in Article 923, C. C."

The provisions of the Code, to which the foregoing decision refers, are the following:

"Illegitimate children, who have not been legally acknowledged, may be allowed to prove their paternal descent. R. C. C., 208 (226.)

"In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:

"1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;

"2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;

"3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived." Rev. Civil Code, 209 (227.)

The acknowledgment of illegitimate children by a declaration

100

before a notary is not the only method of acknowledgment recognized by the Code; but they are allowed to prove their paternal descent by all kinds of private writings, in which the father may have acknowledged the child, or may have called him his child; when the father, either in public or private, has acknowledged him as his child, called him so in conversation, or educated him as such; or when the mother of the child was shown to be living in a state of concubinage with the father, residing as such with him in his house at the time when the child was conceived. Rev. Civil Code, 209 (227.)

The proof administered discloses that the requirement of this article was fully complied with.

But in addition to this the Code provides a method of legitimation of illegitimate children, in the following precise terms:

"Children born out of marriage, except those who are born from an incestuous or adulterous connection, may be legitimated by the subsequent marriage of their father and mother, whenever the latter have legally acknowledged them for their children, either before their marriage, by an act passsed before a notary, and two witnesses; or by their contract of marriage itself." Rev. Civil Code, Art. 198 (217.)

In this case the proof is clear that there was a marriage solemnized between Delphine Fortier's father and mother, by a Catholic priest, in the presence of witnesses, a few days prior to her father's death; that this was done with the consent of the father upon the statement of the priest that it was necessary in order to give him absolution; and that at that time her father recognized Delphine as his child.

In our view, this marriage was a regular acknowledgment of Delphine as his child by the contract of marriage in the sense of that article of the Code.

The consequence is, that Delphine Fortier is shown, by the proof, to have been acknowledged as the child of Gustave Fortier, in the sense of Article 209 of the Revised Civil Code; and to have been legitimated in the sense of Article 198 of the Revised Civil Code.

She is, therefore, the descendant of a natural brother in the sense of Article 923 of the Revised Civil Code, and entitled to inherit as the sole heir of her natural aunt, Angela Fortier; for the law declares that "children legitimated, by a subsequent marriage, have the same rights as if they were born during marriage." R. C. C. 199 (219.)

Again:

And if that were not so, another provision of law would come to the aid of the child of the marriage, which is as follows:

"The marriage, which has been declared null, produces, nevertheless, its civil effects, as it relates to the parties and their children, if it has been contracted in good faith." Rev. Civil Code, 117 (119.)

"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage." R. C. C., 118 (120.)

Surely Gustave Fortier must have contracted his marriage with Caroline Delzay in good faith, as it was made in *articulo mortis.*

Such is the situation as presented upon the record at the date the judgment appealed from was rendered.

## II.

Taking up the case as presented on the appeal of the State, we will now consider the question at issue from that point of view.

The first question for consideration is with regard to certain records which are incorporated in the transcript and brought up for consideration as a part thereof; but which counsel for appellee insist are not properly a part thereof, and that same were never offered and filed in evidence in the court below.

The note of evidence shows that "Mr. Suthon, counsel for the defendant, offers and introduces in evidence, the record in the succession of Gustave Fortier, the father of the present plaintiff, being number 18,976 of the docket of the late Second District Court, and number 56,391 of the docket of the Civil District Court, to which it has been transferred."

If said documents constitute a part of the transcript, it is because they are included in and form a part of that offering.

The record shows that counsel for plaintiff objected to the testimony on the ground that it was *res inter alios acta,* and has nothing to do with the instant case; and that the record referred to relates to another cause of action, and could not be *res judicata* herein.

It further appears that the court overruled the objection as going to the effect, and that counsel for plaintiff excepted and reserved a bill of exception to the ruling of the court.

It appears, from the order given by the attorney general to the clerk, in making the transcript, that not only should the succession

record above referred to be included, but "all four records in vault in this matter, which properly belonged to No. 18,976, Second District Court", also.

In the certificate of appeal made by the clerk it is stated that to the transcript "has been annexed, pursuant to the order of the attorney general, attorney for appellant, the records in the cases of succession of Rosella Fortier, No. 56,388; Delphine Fortier vs. Felicie Fortier, No. 56,389, and Delphine Fortier vs. Marie Henriette Fortier, No. 56,390 of the docket of the Civil District Court, transferred from the late Second District Court. See attorney general's order, copied on folio 115."

The foregoing order and certificates are to be considered in connection with the offering made by the counsel for the public administrator.

These two suits relate to a controversy between Delphine Fortier and her aunts, Felicie Fortier and Henriette Fortier, with regard to the succession of her father, Gustave Fortier; and they were filed in the Second District Court, in 1862, soon after his death.

The contention of plaintiff's counsel is: that inasmuch as these records relate to the succession of Gustave Fortier alone, and not to that of Angela Fortier, they have no application to the present controversy—plaintiff claiming the estate of Angela Fortier, and not that of her father.

Not only so, but his contention is that the two suits referred to were entirely independent of the succession record of Gustave Fortier, and for that reason they are inadmissible, and did not constitute a part of the offering by the public administrator.

The title of the succession is "Succession of Edmond Gustave Fortier, f. m. c. No. 18,976, Second District Court. Filed September 23, 1862."

The caption thereof is:

"The petition of Felicite Angela Fortier, Felicite Rosella Fortier, and Marie Henriette Fortier, praying to be recognized as the only heirs and legal representatives of Edmond Gustave Fortier"; and the petition recites that the parties named are "free persons of color, and who are residing in the city of New Orleans."

They represent "that Edmond Gustave Fortier departed this life in the city of New Orleans on the 2nd day of August, 1862, * * * and that petitioners and the deceased were the only surviving children

of Jean Michel Fortier and Marguerette Milon.

"That they had other children, but they all died unmarried previous to the death of said Edmond Gustave Fortier; that their said mother was a free person of color, and died in 1838, and that their father died in 1836, in the city of New Orleans.

\*      \*      \*      \*      \*      \*      \*      \*

"That petitioners are the natural sisters of said Edmond Gustave Fortier, and are his only heirs and legal representatives, and entitled to the possession of said succession."

Wherefore they pray to be put in possession and recognized as the only heirs, and the legal representatives of the deceased.

The affidavit of F. M. Fortier, annexed to the petition, states:

That he was well acquainted with Jean Michel Fortier and Marguerette Henriette Milon; that Jean Michel Fortier died in New Orleans in 1836; that witness knew him intimately, and was his first cousin.

"That he was well acquainted with Marguerette Henriette Milon, who was a free person of color. That the two lived in concubinage as man and wife, to his knowledge, during the term of thirty years, and that at the time of the death of said Jean Michel Fortier they were still living together as man and wife.

\*      \*      \*      \*      \*      \*      \*      \*

"That the surviving children are Rosella, Henriette and Angela, with whom he is well acquainted. That they were recognized and treated as their children by the said Jean Michel Fortier and Marguerette Henriette Milon; that they all lived in the same house, and were reputed and looked upon by all persons knowing them as being one family.

"That there were no other children than the above named.".

The affidavit of D. Augustin, also annexed to the petition, states that he knew Jean Michel Fortier, and that he was a free white person; that he died in this city in the year 1836, and had lived in concubinage with Marguerette Henriette Milon up to the time of his death. That they lived as man and wife, brought up their children in the same house, and were considered as one family.

States that he is acquainted with Rosella, Henriette and Angela Fortier, the children of the said Jean Michel Fortier and the said Henriette Milon, who are now living in the city of New Orleans.

"Have visited the house in which they lived; that is to say, the house of Jean Michel Fortier. Knew him when I was a child in college."

The affidavit of Edmond Fortier is much to the same effect. He says that Edmond Gustave Fortier, one of these children, was his godson. That he frequently visited the house, knew all about the family, and was in the habit of dining with them.

It is true this record, in so far as it applies to the estate of Gustave Fortier, was *res inter alios acta,* but it has a distinct significance in regard to the instant controversy in other material respects.

It relates to the lineage not only of Delphine Fortier, but that of her father and her aunt; and shows, by judicial admissions, that they were free persons of color, or descendants' of their grandfather, a white man, by his illicit union with a free person of color. That the petition of her aunt Angela Fortier, and her sisters, admits that they were free persons of color.

One of the principal points of objection to the capacity of Delphine Fortier to inherit from her aunt, as a natural child of Gustave Fortier, which is made by the attorney general and his assistant counsel, is that her father co-habited and lived with her mother, who was a free person of color. It is on that score that they urge the prohibition of the Code of 1825 to the effect "that free persons and slaves are incapable of contracting marriage together; the celebration of such marriage is forbidden, and the marriage is void; there is the same incapacity and the same nullity with respect to marriage contracted between free white persons with free people of color." Article 95.

Another point upon which reliance is placed, is the following:

That "only those natural children can be legitimated who are the offspring of parents who, at the time of conception, could have contracted marriage." Rev. Civil Code, Art. 200.

It was, doubtless, with that object in view that the public administrator offered the aforesaid record; but, even conceding the succession records were properly offered in that sense, we must further consider whether the two suits offered with, and brought up in the transcript, were, necessarily, germane, and can be looked into for the like purpose of ascertaining the legality or illegality of the aforesaid marriage as affecting the question of legitimation or acknowledgment of Delphine Fortier.

It must be borne in mind that the question under discussion at the time the succession of Gustave Fortier was opened was, whether his

brothers and sisters, or his child, were called to the inheritance. The article of the Code which controls that question provides that "natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants, nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the State." Article 913 of the Code of 1825.

The same provisions have been reproduced in Revised Civil Code 919.

The plain terms of that article indicate that natural children are called to the succession of a natural father, who has duly acknowledged them, "to the exclusion only of the State"; and from that it would seem to follow that his collateral relations were preferred.

That article, and the decisions of the court interpreting it, control the question of the heirship of Delphine Fortier to the estate of her natural father, Gustave Fortier, in 1862.

There would appear to have been no room for proof in that case, as the aforesaid article provides that collateral relations are called to the inheritance of the estate of a natural brother in preference to natural children, notwithstanding they have been duly acknowledged by him.

Referring to the suit No. 18,997—one of those to which objection is urged—we find the following allegation at the commencement of the plaintiff's petition, to-wit:

"The petition of Delphine Fortier, f. m. c., of this city, respectfully represents that she is the duly acknowledged natural child and only surviving legal heir of the late Edmond Gustave Fortier, f. m. c., and that her mother, Caroline Delzay, a f. w. c., was publicly known as living in a state of concubinage with her father, and residing as such in his house at the time when petitioner, his child, was conceived; and that petitioner was acknowledged as his child and called so by her said father in conversation, both in public and in private, and that he caused her to be educated as such."

She then makes reference to the petition of Angela Fortier and the other sisters of her father, which was filed on the 23rd of September, 1862, in which they style themselves as legal heirs of Edmond Gustave Fortier, and petition the court to recognize them and put them in possession of his estate as his heirs.

She also makes reference to the affidavits of the witnesses already referred to in that connection, and to the judgment thereupon rendered, recognizing her aunts, and putting them in possession.

She, thereupon, charges that said judgment was illegally obtained by gross fraud practiced upon the court by said pretended heirs, and through said fraud and illicit practices they were recognized and placed in possession as heirs.

She alleges that her said aunt had no right, in law or equity, to the estate of her father, and that she is entitled, exclusively, to be recognized as the only surviving and exclusive heir of said deceased, and to be put in possession of said estate.

To that petition Angela Fortier and her sister excepted, that the petition disclosed no cause of action, because it did not allege that the petitioner was acknowledged by Gustave Fortier by a declaration made in a notarial act, or that an acknowledgment was made in the registry of births or baptisms, as the law required.

In his reasons for judgment the judge *a quo* reviewed the law applicable to the exception, and held same to be good, stating that the court is not satisfied that the allegations of the petition are sufficient to authorize such process; and while reserving to the claimant, Delphine Fortier, all such other rights as she may legally have in the premises, it refused the injunction prayed for.

The averment in the petition in suit 19,161—another record to which objection is made—is almost identical with the one first filed, as will appear from the following: *

"The petition of Delphine Fortier, f. w. c., residing in the city of New Orleans, with respect shows that her father, Edmond Gustave Fortier, f. m. c., departed this life on the 2nd day of August, 1862, in the city of New Orleans, leaving property to the value of $2,000.00, with no ascendants, nor descendants, but your petitioner.

"Petitioner shows that her said father, and her said mother, Caroline Delzay, f. w. c., were at the conception and birth of your petitioner, and had for a long time prior thereto, lived publicly as husband and wife.

Also:

"Your petitioner further shows that prior to her said father's decease, in the month of July, 1862, he was regularly married to the mother of your petitioner, Caroline Delezay, f. w. c., and that, after his marriage, he called your petitioner his legitimate child. That, until said marriage, she was the duly acknowledged natural child of said E. G. Fortier, f. m. c., and that by the marriage of her father

and mother she became the legitimate child of her parents, and the only legal heir to their estate."

To this petition her aunts were made parties, and a judgment was prayed for similar to that demanded in the former suit.

To that petition the sisters of Gustave Fortier, as defendants, filed similar exceptions to those of the former suit, in which, among other things, the following averment is made:

"Defendants in the above entitled and numbered suit excepts to the petition of plaintiff, Delphine Fortier, f. w. c., and say that they are not bound to answer the same for the following reasons:

"That the petition discloses no cause of action, etc."

In his reasons for judgment, the judge *a quo* makes this statement:

"But the petition sets forth the other grounds, to-wit:    That in July, 1862, the said Edmond G. Fortier was legally married to Caroline Delzay, and that she, being the duly acknowledged child before and after, was thereby legitimated, and became entitled to the estate as his legal heir."

After making the additional statement, that a marriage of itself was insufficient without the plaintiff having been otherwise legally acknowledged to constitute the plaintiff his legal heir, the judge makes this observation, viz.:

"The allegations set forth as legitimating this party-plaintiff, for the purpose of being recognized as heir, and annulling judgment rendered in suit No. 18,976, are not sufficient to authorize the action. As this exception disposes of the case, it is unnecessary to consider how far the allegations of 'legitimate child by subsequent marriage' excludes the former plea of 'acknowledged natural child.'

"Let the exception be maintained."

Thereupon, the following judgment was rendered:

"For the reasons assigned, in the written opinion of the court, this day delivered and on file, it is ordered, and adjudged, that the exception herein filed be maintained, and the demand of plaintiff be rejected; and judgment is rendered in favor of defendant, and plaintiff is condemned to pay cost of suit, reserving her rights, if any, to sue for alimony.

"Judgment rendered and signed on March 5, 1863.".

It is evident, from the foregoing proceedings, that counsel for Delphine Fortier was of the impression that she, as a natural child, was called to the succession of her natural father, in preference to her

aunts, because she had been duly acknowledged by her father (Code of 1825, Article 912); and that as her father and mother had been married, that she had the same rights as if she had been born during a marriage. Code of 1825, Article 219.

That it was by this means that Delphine Fortier sought to exclude her aunts from the estate of her father, and to establish her own right thereto; but, in so far as the instant case is concerned, the decisions rendered on those two proceedings are without practical significance, in themselves.

That while we are not altogether clear as to the correctness of said judgments, they did have the effect of putting a *quietus* to the controversy, and of divesting Delphine Fortier of all interest as heir to her father's estate.

But, as we have already said, the determination of that issue has no bearing upon this controversy, other than it refers to the geneology of the Fortier family—the present controversy appertaining exclusively to the succession of Angela Fortier, which is alleged to have devolved upon the claimant by her death, in April, 1898.

As we have already said, the heirship of Delphine depends upon the proper construction of Article 917 of the Code of 1825, to-wit: "If the father and mother of the natural child died before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants"—Delphine claiming as the descendant of the brother of her natural aunt.

To put the proposition of counsel for the State in its strongest light, and to show his principal reliance for recovery, and to defeat the inheritance of Delphine, we make the following extract from his supplemental brief, to-wit:

"Counsel says the evidence shows that Delphine Fortier, the appellee, is the niece of the deceased; was called so by her. It is certainly a novel doctrine that an unacknowledged illegitimate bastard who could not inherit from her father can so inherit from that father's illegitimate, unacknowledged, sister, issue of the prohibited union of a white man with a negro woman—because the deceased heir, a bastard, may have called the plaintiff niece."

Therefore, we have the proposition that Delphine Fortier was not entitled to inherit from her aunt, because she was the issue of the union of a white man with a negro woman, and consequently, debarred by reason of the prohibition of the code of 1825, to the effect, that

*"free persons and slaves* are incapable of contracting marriage together; that the celebration of such marriages is forbidden and the marriage is void; there is the same incapacity and the same nullity with respect to marriages contracted by *free white persons,* with free people of color." Article 95.

Conceding that proposition, it can not be sustained as having applicability to the facts of this case, for the reason that, Gustave Fortier was not a white man and his concubine, Caroline Delzay was, confessedly, a person of color.

Recapitulating the evidence on this score, we find that the records, to the introduction of which objection was urged—and which have been analyzed—disclose that Angela Fortier and her sisters, praying to be recognized as the heirs of Gustave Fortier declare, that they were free persons of color and that they were the sisters of Gustave Fortier, and therefore, his heirs.

The title of the proceeding is, "Succession of Edmond Gustave Fortier, f. m. c."

The certificate of the death of Edmond Gustave Fortier signed by the recorder of births and deaths under date September 23, 1862, declares, that he died in the city of New Orleans on the 2nd of August, 1862, aged 32 years, "a native of Louisiana, and the natural issue of Jean Michel Fortier with Marguerette Henriette Milon, both of this city."

The affidavit of F. M. Fortier of same date and already referred to, states, "he was well acquainted with Jean Michel Fortier and Marguerette Henriette Milon. * * * Was his first cousin, and was also well acquainted with Marguerette Henriette, who was a free person of color. The two lived in concubinage the same as man and wife to his knowledge during the term of 30 years."

The affiant states that Jean Michel Fortier was one of the directors of the Bank of Louisiana. He states that he knew their children, and among them, mentions the name of Edmond Gustave Fortier, and also the names of Rosella, Henriette and Angela Fortier, as the sisters of Edmond Fortier.

A similar affidavit of D. Augustin makes this statement:

That he was well acquainted with Jean Michel Fortier, and that he was a free white person and lived in concubinage with Marguerette Henriette Milon, and that he knew their children, Rosella, Henriette and Angela Fortier, and Gustave Fortier.

A similar affidavit of Edmond Fortier makes the statement, that "he was well acquainted with Jean Michel Fortier and Marguerette Henriette Milon.

"Fortier was my uncle and was a free white person and the other was a free colored person. They lived together up to the time of the death of Fortier, as husband and wife."

He also mentioned the names of their children, Rosella, Henriette, Angela Fortier and Edmond Gustave Fortier.

In the suit of Delphine Fortier against Felicite Fortier and others, No. 18,997, above referred to, the averment is that "the petition of Delphine Fortier, f. w. c., of this city, respectfully represents that she is the duly acknowledged natural child and only surviving legal heir of the late Edmond Gustave Fortier, f. m. c., and that her mother, Caroline Delzay, f. w. c., was publicly known as living in a state of concubinage with her father, etc."

The exception of Angela Fortier and her sisters, as defendants, acquiesced in that statement.

Similar allegations appear in all these various proceedings, and taken in connection with the testimony which is hereinbefore detailed, it becomes perfectly manifest that the mother of Delphine was a free woman of color and that the mother of Gustave Fortier was, likewise, a free woman of color; and that consequently all these people were free persons of color, except the grandfather of Delphine, who was a white man.

The father of Gustave Fortier being a white man and his mother a woman of color, he was necessarily a person of mixed blood—one-half colored, and one-half white—and consequently, not a white man. There was, therefore, no prohibition in law against his being married to Caroline Delzay, a free person of color. For the same reason Angela Fortier was a person of mixed blood, and there was no prohibition in law against her inheriting the estate of her brother, Gustave.

The same is equally true of Delphine—she being the issue of the union between Gustave Fortier, a person of mixed blood and Caroline Delzay, a free person of color. On this theory, and upon the evidence detailed in support thereof, all doubts and difficulties in this case have been resolved in favor of the validity of the marriage of Gustave Fortier and Caroline Delzay; and relieved it from the imputation of any illegality which has been suggested by the attorney general.

There is certainly no prohibition in the law which has been referred to—and there is none of which we are aware—against the marriage of free persons of color, *inter se*, or between free persons of color and persons of mixed blood.

Our conclusion is, that the marriage between Gustave Fortier and Caroline Delzay must be given its full effect as having legitimated Delphine Fortier as the issue thereof, to the extent, at least, of enabling her to inherit from her natural aunt, Angela Fortier—even if that were necessary.

It has been frequently held by this court that slight proof of the celebration of a marriage is sufficient when the evidence shows, as it does in this case, that the spouses uniformly, publicly and for a great period of time, have borne to each other the relation of husband and wife. Hubbell vs. Inkstein, 7th Ann., 252.

In that case the court gave effect to the provisions of the code, which declare, that although a marriage may be a nullity, it "produces, nevertheless, its civil effect, as it relates to the parties and their children, if it has been contracted in good faith." C. C., of 1825, Article 119; R. C. C., 117.

In Taylor vs. Sweet, 3 La., 33, the court gave effect to circumstantial testimony in support of the celebration of a marriage and as tending to show the residence together of the parties by general reputation and cohabitation.

In Holmes vs. Holmes, 6th La., 463, it was held, that the code does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties; and that it does not make such an act exclusive evidence of a marriage. That laws appertaining to forms and ceremonies are directory to those alone who were authorized to celebrate marriages. That marriage may be proved by any species of evidence not prohibited by law, which does not pre-suppose a higher species of evidence in the power of the party.

That co-habitation as man and wife, furnishes presumptive evidence of a preceding marriage.

In succession of Hubee, 20th Ann., 97, the court said:

"It has been repeatedly declared that the law does not declare null, marriages, in which the laws relating to forms and ceremonies have not been observed; that marriage may be proved by any species of evidence not prohibited by law, which does not pre-suppose a higher

species of evidence within the power of the party." 3 La., 33; 2 Ann., 944; 7 Ann., 253; 15 Ann., 253.

In Hobdy vs. Jones, 2 Ann., 944, it was said by the court:

"The possession of the conjugal condition in the present case was sufficient evidence of the marriage. By our laws it would be sufficient to establish the paternity of the issue, and was a question of fact for the jury to determine. To enable them to come to this conclusion, evidence was properly admitted of the parties living together and treating each other as man and wife; of their being received in society as such; of their being visited by the family of respectable citizens of the neighborhood; of their demeaning themselves in public and elsewhere as man and wife, and being so considered in the community in which they had for years resided as members of society, in the enjoyment of their respective conjugal rights."

In succession of Pearce, 30 Ann., 1168, the court made this clear and emphatic statement in regard to the proof and sanctity of marriages, and of their validity, and said:

"Here, the law sanctions the marriage, when the parties were willing, able to, and did contract, pursuant to the forms and solemnities which it prescribes. To those who had so contracted—whites or blacks, freemen or slaves, and by whatever name their marriage may be called, whether public, private or religious—the law of 1868 was entirely useless. It could neither add to nor detract from an already existing validity.

"It is objected that the marriage of Pearce and Charlotte was celebrated by one who had not been authorized by a license to celebrate it. Our Code does not declare null a marriage not preceded by a license. 6 La., 470."

In Sabalot vs. Populus, 31st Ann., 854, the court said that the laws which require a license to issue for the celebration of a marriage, is "merely directory to those who are empowered to celebrate marriage, and its non-observance can not, of itself, affect their validity when, as in this case, they are otherwise duly solemnized and contracted."

On the foregoing review of the authorities, and applying same to the evidence, our conclusion is that the marriage between Gustave Fortier and Caroline Delzay was good in point of form, and, as we have already stated, valid in point of law.

This conclusion is strengthened by the allegation made in the petition of Delphine Fortier, in 1862, in regard to the marriage of her

father and mother, which was alleged to have occurred immediately previous to his death; and also by the reference thereto made by the judge in the reasons he assigned for his judgment.

For it is hardly to be supposed that such a sworn declaration would have been made in a petition filed by Delphine Fortier in court, so soon after her father's death, in view of the fact that the marriage is alleged to have been celebrated only two or three days before his death.

Certainly at that time the fact of the marriage must have been well known and recognized by all.

Entertaining this view, the judgment appealed from is correct.

Judgment affirmed.