(43 South. 1016.)

No. 16,507.

LANDRY et ux. v. AMERICAN CREOSOTE WORKS, Limited.

(April 29, 1907.)

1. BASTARDS — ILLEGITIMATE CHILD — STATUS OF PLAINTIFFS AS RELATES TO DECEDENT.

Plaintiffs were the natural father and mother of their late son.

2. SAME—LEGITIMATION.

He never was legitimated as required by article 198 of the Revised Civil Code.

3. SAME—ARTICLES 198 AND 200 ARE LIMITATIVE.

The articles of the Revised Civil Code relating to acknowledgment do not govern when in conflict with those relating to the legitimation of children. The articles cited above are imperative.

4. SAME—MEANING IN LAW OF "CHILD."

Child, in law, is the legitimate offspring. A statute or an act referring to a father or mother does not, in the absence of special provision or statement, include within its terms the natural father or mother.

(Syllabus by the Court.)

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; Prentice Ellis Edgrington, Judge.

Action by Aristide Landry and wife against the American Creosote Works, Limited. From a judgment for plaintiffs, defendant appeals. Reversed.

Morgan & Milner, for appellant. Alfred Elias Billings and Lucien Herman Marrero, Jr., for appellees.

BREAUX, C. J. Plaintiffs, colored persons, brought this suit for a judgment in the sum of $10,000 for damages they claim on account of the death of their son, who met with death while at work for the defendant company.

They sue as the father and mother. They were married after the birth of their son, now deceased. There was no impediment to their marriage. They were free to contract. Rev. Shallon Bome was the officiating minister by whom they were united in marriage.

The certificate of marriage was admitted in evidence. From it, it appears that June 5, 1886, is the date of the marriage.

The mother testified that shortly after the birth of the decedent she expressed a wish to join the church. The church authorities informed her that she would not be admitted in her unmarried state. She shortly thereafter married Aristide Landry, her husband.

The husband, who is now an old man, testified that his son Joe, the decedent, was not 21 years of age at the date of his death; in the words of the witness, that "he was not old enough to vote."

Mary Parker as a witness said that Luke Brooks, the minister, baptized the son Joe Landry at his home. She was his godmother.

The plaintiffs presented him to the minister for baptism as their son.

Luke Brooks died not very long ago.

An elder brother of the deceased testified to the same effect regarding the baptism. He searched for the baptismal record of the dead minister (Brooks) but could not find it.

Defendant filed a peremptory exception, in which it alleged the illegitimacy of plaintiffs' son, and that they had never acknowledged him, and in consequence they have no standing in court and no cause of action.

The district judge overruled the exception, and after trial on the merits the judgment of the district court condemned the defendant to pay $2,100.

From this judgment the defendant appealed.

Suggestion of appellee to dismiss the appeal.

We are not impressed by the grounds

urged by appellee's counsel for the dismissal of the appeal. They are that the attorneys executed the bond in their own names, and not in the names of their clients. This ground is not tenable. The attorney who moved for the appeal and attended to preparing the bond represented his client. There is no good reason upon which to base an order of dismissal on the ground that he represented himself personally as an interested party, and not his client. The court sees no ground upon which to dismiss the appeal.

We take up for decision the question raised in the peremptory exception.

We have noted that the father and mother were married about two years after the birth of the decedent.

Without objection, evidence was admitted, secondary in its nature, going to prove that he was subsequently christened as their child. He lived with his parents, handed to them part of his wages, and was known and acknowledged by their conduct as their son. This is not contradicted. It remains that there was no notarial act of acknowledgment.

It devolves upon us to decide whether proof of legitimation must be limited to the strict letter of the Civil Code.

At the outset we will state that it must be borne in mind that acknowledgment is one thing and legitimation another.

We have to deal exclusively with legitimation, and have naught to do in this case with acknowledgment.

Legitimation from its date confers the same right as children have who are born during marriage.

The decision in Talbot v. Hunt, 28 La. Ann. 4, is pertinent.

The court in the case cited infra construed articles 198 and 200 of the Revised Civil Code, and held that the two parents who legitimate their offspring must make the ac-knowledgment by act before a notary public and two witnesses.

This was the opinion in the State Case. Succession of Llula, 41 La. Ann. 90, 6 South. 555.

The legitimation of natural children comes from the Roman law. It was introduced by Constantine in 335 of the Christian era.

It was timely introduced, says Huc (volume 1) in his work on French Law.

Article 198 of the Louisiana Code is in some respects quite similar to the corresponding article of the French Code.

To legitimate under that article it is necessary to acknowledge the child before marriage. To quote from the article:

"May be legitimated by the subsequent marriage of their father and mother."

These words bear no application to the child born after marriage.

The French authorities on law do not inform us that any change has been made in France in the law on this subject. In Louisiana it is different. A change has been made, and a new article, to wit, article 220 of the Revised Civil Code, adopted, declaring that a natural father or mother shall have power after marriage to legitimate his or her natural children by an act passed before a notary public and two witnesses, in which it is declared that it is the intention of the parent to legitimate the child or children.

There is no mention made of marriage in this article, except that it is declared that only those natural children can be legitimated who are the offspring of parents who at the time of conception could have contracted marriage.

The plaintiffs in this case did not comply with that formality, and no declaration was made by them in authentic form.

That article, this court has held, provides another mode of legitimation. 41 La. Ann. 90, 6 South. 1017.

The French authorities hold that their article 331, corresponding to our article 198, is limitative, and does not admit of other modes of legitimation.

The plaintiffs particularly urge that the decedent had been acknowledged, and that acknowledgment in itself is sufficient to entitle them to inherit.

That is quite true, but it none the less does not have the effect of legitimating their late son.

It is almost useless to mention that a natural child, acknowledged, may inherit, although not legitimated. The right of inheritance is not fixed, however, as it depends upon acknowledgment, and frequently other heirs are prior in degree or right to inheritance.

Having reached the conclusion that the decedent had not been legitimated, we are constrained to hold that the parents cannot stand in judgment. In order to stand in judgment, one must be either a legitimate or a legitimated heir. Civ. Code, art. 198.

The statute reserves the right to sue to the legitimate mother and father.

That has been the construction of wills. Persons who institute their children as legatees limit the legacy by the word "child" to the natural child. This is the common meaning of the word "child."

Webster: "(In law) a legitimate offspring."

In every known system of law the word "child" means child born in lawful wedlock. Cyc. 125.

See, on the same subject, Enfant Naturel, 12 Laurent (2d Ed.) § 456.

The result may have its hard phases. It is none the less the law.

"Dura lex scripta tamen."

For reasons assigned, plaintiffs' demand is rejected, and the judgment appealed from is avoided, annulled, and reversed; plaintiffs to pay costs in both courts.