O’NIELL, Chief Justice.
 

 The plaintiffs are claiming, by representation of their father, an interest in the succession of his parents. He was an illegitimate child, but the plaintiffs claim that he was legitimated by the marriage of his parents, six months after he was born. The district judge decided that the marriage of the plaintiffs’ grandparents did not have the effect of legitimating their child, even though they formally acknowledged him to be their child, in having him baptized, and in the registering of the baptism, at the time of the marriage ceremony. The judge, having so decided, rejected the demands of the plaintiffs, because the defendants are the legitimate sons and daughters, and the children of a deceased legitimate daughter, of the grandparents of the plaintiffs. The plaintiffs have appealed from the decision. The only question is whether the acknowledgment of the illegitimate child, by the parents, in the baptizing of the child and in the recording of the baptism, at the time of the marriage of the parents, and as a part of one continuous ceremony, was such an acknowledgment, under article 198 of the Civil Code, as to give to the marriage the effect of legitimating the child. The case was submitted on a- statement of facts, agreed , to by all parties. According to the statement of facts, the parents of the illegitimate child, when they were very' young, were anxious to be married, but their parents objected because of their youth. The young couple entered into a state of concubinage; and, after they had so lived together for about a year, the illegitimate boy was born. When he was nearly six months old, the parents consulted the pastor of their church, as to what they should do, “in order to blot out the stain,” and, as the statement of facts expresses it, they declared to their
 
 *971
 
 pastor “their intention and desire to do the right thing towards each other, towards the child, and the public.” It is not said, in so many words, in the statement of facts, that the parents of the illegitimate child told their pastor that they intended to
 
 legitimate
 
 the child. It is likely that they had never heard of the verb
 
 legitimate;
 
 but the inference is unavoidable, from the conduct of the young parents, that they give the pastor to understand that they intended and desired to do that which the law calls "legitimate” their child. The pastor advised them to enter into the holy bonds of matrimony and to have the child baptized. Accordingly, on the day on which the child was six months old, the parents appeared at the church and then and there were married and had the child baptized. It is admitted, in the statement of facts, that the marriage ceremony and the baptizing of the child, both of which were performed by the same clergyman, “were contemporaneous proceedings”; that is to say, they constituted one continuous ceremony ; and it is admitted that in this ceremony the contracting parties “verbally acknowledged said child as being their child.” The baptismal certificate, a copy of which is in the record, gives the names of the parties to the marriage as being the parents of the child, and gives the date of the birth of the child, and the names of the sponsors, or godparents; and on the reverse side of the baptismal certificate is a certificate saying that the records of the church show that the parents of the child were married on the date of the baptism. The question, therefore, is whether these formalities constituted an
 
 acknowledgment
 
 by the parents of the illegitimate child, “by their contract of marriage itself,” as is required by article 198 of the Civil Code. The article declares:
 

 “Children born out of marriage, except those who are born from an incestuous or adulterous connection, may be legitimated by the subsequent marriage of their father and mother, whenever the latter have legally acknowledged them for their children, either before their marriage by an act passed before a notary and two witnesses,
 
 or by their contract of marriage itself.”
 
 (The italics are by the court.)
 

 In the Succession of Fortier, 51 La.Ann. 1562, 26 So. 554, in 1899, the court expressed the opinion that a verbal acknowledgment of an illegitimate child, by the father, to a priest, when the father of the child was about to be married to the mother of the child, was a sufficient acknowledgment to give the marriage the effect of legitimating the child. That opinion, if adhered to, would settle this case. And the opinion ought to be adhered to, even though it was not the only basis for the decision in the case, and even though, since the decision was rendered, the court, inadvertently, in two cases, gave to the term “their contract of marriage itself” the wrong meaning. The “contract of marriage itself” means, of course, the marriage ceremony, and has reference to the declaration made in article' 86, and repeated in article 90, of the Civil Code: “The law considers marriage in no other view than that of a civil contract.” That has reference, of course, to the reciprocal
 
 *973
 
 rights and obligations of the parties to the contract; beyond which, the law considers marriage as a status, in which society is concerned.
 

 In the case of Van Dickson v. Mayfield, 158 La. 529, 104 So. 315, 316, and again in Succession of Jones, 185 La. 377, 169 So. 440, 442, the expression “the contract of marriage itself,” as used in article 198 of the Civil Code, was referred to, inadvertently, as if it meant a prenuptial contract, or what is technically termed a marriage contract; which is dealt with in articles 2325-2398, being chapters 1 and 2 of title 6 in book 3 of the Civil Code. The marriage contract, referred to under that title, and regulating the reciprocal rights and obligations of a couple intending to be married, is required, by article 2328 of the Civil Code, to be made by an act before a notary and two witnesses, and must be made before the marriage. In fact, it is declared in article 2329 that the marriage contract, or matrimonial agreement, as it is more often called in both the Code of France and the Louisiana Code, cannot be altered, much less made, “after the celebration” of the marriage. It is plain, therefore, that an acknowledgment of an illegitimate child, by the parents, in a so-called “marriage contract,” would be, essentially, an acknowledgment before the marriage by an act passed before a notary and two witnesses. But such an acknowledgment, by the parents of an illegitimate child,, would not be an acknowledgment “by their contract of marriage itself.” The expression “or by their contract of marriage itself,” in article 198 of the Civil Code, would be superfluous if it meant a “marriage contract,” as defined under its proper title in the Civil Code. In the case of Van Dickson v. Mayfield, there was no occasion for defining the expression, “or by their contract of marriage itself,” because the Mayfield child, whose legitimacy was in question, was not formally acknowledged by a so-called marriage contract, or by any other notarial act, before the marriage of her parents, “or by their contract of marriage itself.” The following expression in the opinion, therefore, in so far as it refers to a “marriage contract,” was entirely unnecessary, and inadvertent, viz.:
 

 “In this case, there is not the slightest trace of evidence tending to show that, prior to the marriage of defendant’s father and mother, they acknowledged her as their child, either by an act passed before a notary and two witnesses or in any marriage contract, and hence their marriage did not have the effect of legitimating her.”
 

 In the Succession of Jones, also, there was no occasion or intention to define the expression “or by their contract of marriage itself,” as used in article 198 of the Civil Code. The illegitimate child, in that case, was not
 
 formally
 
 acknowledged by the parents at any time, either by an act passed before a notary and two witnesses, or by their contract of marriage itself. The following reference, in that case, to the Van Dickson Case, therefore, cannot be regarded as a judicial interpretation of the expression “by their contract of marriage itself,” as used in article 198 of the Civil Code, viz,:
 

 
 *975
 
 “It is clear that she [the illegitimate child] does not enjoy the status of a legitimated child, because her parents did not acknowledge her by notarial act before two witnesses, or marriage contract before the marriage. Van Dickson et al. v. Mayfield, 158 La. 529, 104 So. 315; Succession of Yoist, 132 La. 309, 61 So. 384; R.C.C. arts. 198, 200.”
 

 All that was decided in the Succession of .Yoist was that Act No. 54 of 1894, prohibiting marriages between white persons and persons of color, did not repeal article 200 of the Civil Code, permitting either the father or mother of an illegitimate child to legitimate the child by a declaration to that effect before a notary public and two witnesses, provided such parent has no legitimate ascendant or descendant. In the Succession of Yoist there was no interpretation given of tho expression “by their contract of marriage itself,” as used in- article 198 of the Civil Code.
 

 Of course, if the expression, “by their contract of marriage itself,” in article 198 of the Civil Code, means by the prenuptial agreement called
 
 marriage contract,
 
 the father of the plaintiffs in this case was not legitimated by the marriage of his parents. But, as we have pointed out, there is no authority for interpreting the term “contract of marriage itself” as meaning a marriage contract, or prenuptual agreement, as defined under its proper title in the Civil Code. The declaration in article 198 of the Civil Code that the parents of an- illegitimate child may, for the purpose of legitimating the child, acknowledge the child “by their contract of marriage itself,” does not mean that the marriage is, of itself, an acknowledgment of any illegitimate child or children whom the contracting parties may have. On the contrary, the marriage of the parents of an illegitimate child does not have the effect of legitimating the child, unless the child has been acknowledged previously by a notarial act or is acknowledged by the contract of marriage itself. Landry v. American Creosote Works, 119 La. 231, 43 So. 1016, 11 L.R.A.(N.S.) 387; Succession of Serres,, 136 La. 531, 67 So. 356; Succession of Mingo, 143 La. 298, 78 So. 565; Van Dickson v. Mayfield, 158 La. 529, 104 So. 315; Succession of Jones, 185 La. 377, 169 So. 440.
 

 The history of article 198 of the Civil Code proves conclusively that the expression “the contract of marriage itself” means the marriage ceremony, or celebration, and not a so-called marriage contract, or prenuptial agreement. The corresponding article (331) of the Civil Code of France, as originally adopted, required the acknowledgment to be made
 
 in
 
 the act of celebration itself — “dans l’acte meme de celebration” — if not made before the marriage. Before this article of the Civil Code of France was amended, it was the opinion of all of the French commentators who commented on the article that the acknowledgment of an illegitimate child had to be embodied in the marriage certificate and signed by the parties to the marriage, in order for the marriage to have the effect of legitimating the child, if the parents had not
 
 legally
 
 — "legale
 
 *977
 

 ment”
 
 — acknowledged the child before the marriage. Fenet, Recuiel Complet des Travaux Préparatoires du Code Civil (1827 Ed.) vol. X, p. 46; Toullier, Le Droit Civil Frangais (Brussels 1837 Ed.) vol. I, p. 214. See also, to the same effect, Josserant, Cours de Droit Civil Positif Frangais (10th Ed.1932) vol. I, p. 662 et seq., Nos. 1272-1274; Beudant, Cours de Droit Civil Frangais (2d Ed. 1936) vol. Ill, p. 425, No. 1214; Colin et Capitant, Cours Élémentaire de Droit Civil Frangais (4th Ed.1923) vol. I, p. 309. The judisprudence of France supported that rule. Metz, 11 janvier, 1870, Journal du Palais 70. 508, Sirey 70. 2. 140 [Beaudier C. Mangin]; Bordeaux, 20 mars, 1830, Sirey 30. 2. 208 [Expert-C. Lejunie] ; Cass., 12 avril, 1820, Sirey 30. 1. 342 [Les héritiers Salomon C. Salomon]; Nimes, 5 juillet, 1819, Sirey 19. 2. 283 [Louis C. les epoux Lassiat et Riousset].
 

 When article 331 of the Code Napoleon was originally adopted as article 217 of the Louisiana Code of 1825, the French text was exactly the same as in the Code Napoleon, except that the concluding words, “dans l’acte méme de célébration,” were changed to “par leur contrat de mariage” — by their contract of marriage. The translation in the Code of 1825 is “by their contract of marriage itself.” When this article, 217 of the Code of 1825, as translated, was copied in the revision of 1870, as article 198, only two changes were made: First, the words “by an act passed before a notary and two witnesses,” which words were not in either article 331 of the Code Napoleon or article 217 of the Louisiana Code of 1825, were inserted in the Code of 1870; and, second, the additional paragraph, “Every other mode of legitimating children is abolished,” in article 217 of the Code of 1825, was omitted from article 198 of the Civil Code of 1870; and an: other article, 200, was added in the Civil Code of 1870, allowing either the father or mother alone, whether married or .unmarried, to legitimate an illegitimate child, by a notarial act, provided such parent has no legitimate ascendant or descendant heir. That change in the law had been effected already, by an amendment of article 217 of the Code of 1825, by a Statute of March 24, 1831, p. 86. After article 331 of the Code of France had been interpreted, unanimously, as meaning that the acknowledgment “dans l’acte méme de célébration” had to be embodied in the marriage certificate, the article was amended, by an act of 1897, so as to provide that, whenever an illegitimate child was legitimated by tlie marriage of the parents, the recorder should record the fact in the margin of the birth certificate. The article, 331, was amended again by an act of 1915, in a most important particular, by requiring merely that the acknowledgment should be made
 
 at the moment of the celebration of the marriage,
 
 “au moment de sa célébration,” instead of
 
 in the act of celebration itself,
 
 “dans l’acte méme de célébration”;. and it was then provided, in the amendment of the article, that, where a child was legitimated by the marriage of the parents, the officer of civil status who celebrated the marriage should state
 
 in a separate instrument
 
 that the acknowledgment and legitimation had talc-
 
 *979
 
 en place. In that respect the article of the Civil Code of France remains the same today, although it was amended in other respects by an act of April 25, 1924.
 

 The confusing of the term “contract of marriage” with the term “marriage contract,” in Van Dickson v. Mayfield, was the result of the substituting of the term “contrat de mariage,” in article 217 of the Louisiana Code of 1825, for the term “l’acte de célébration,” in article 331 of the Code Civil Frangais. That change was apt to cause confusion, because in the French law a marriage is not called a contract of marriage. It is called “l’acte de célébration,” or “l’acte de mariage.” The term “contrat de mariage,” in the French law, has reference only to the so-called marriage contract, or matrimonial agreement, which precedes the marriage ceremony. It is called “contrat de mariage” in the French law because there is no other way of saying “marriage contract” in the French language. But the translation in the Louisiana Code; “their contract of marriage itself,” indicates that the French text, “contrat de mariage,” was deemed synonymous with “l’acte de célébration,” or “l’acte de mariage.”
 

 It is astonishing how exactly the Court of Cassation stated, as a hypothetical case, the facts of the present case, in the case entitled Expert C. de Brugiére et autres, 27 decembre 1831, Journal du Palais, vol. 24, 1831, 1832, 3d Ed. by Ledru-Rollin, p. 496; where the court cited Cass. 12 avr. 1820, et Douai, 15 mai 1816, and the notes to these cases, as authority for the statement in the headnote, which is translated thus: Supposing the case were otherwise, the acknowledgment (la reconnaissance) of a child and the marriage of his father and mother, performed simultaneously the same day, on the same registers, in presence of the same witnesses and of the same public officer, should be considered as one and the same act, fulfilling the intendment (le voeu) of article 331, Civil Code.
 

 The only cases cited or relied upon by the legitimate heirs in this case are Van Dickson v. Mayfield, 158 La. 529, 104 So. 315, and Landry v. American Creosote Works, 119 La. 231, 43 So. 1016, 11 L.R.A.(N.S.) 387. Van Dickson v. Mayfield is not at all in point, because in that case the parents of the illegitimate child did not have the child baptized, as far as the record shows. In fact, they did nothing that might be regarded as a formal acknowledgment of the child “by the contract of marriage itself.” In Landry v. American Creosote Works the only testimony tending to prove that the illegitimate child was baptized was that the baptizing took place some time subsequent to the marriage of his parents; hence it could not be said that the acknowledgment, if made in the baptizing of the child, by the parents, was an acknowledgment “by their contract of marriage itself.” That fact is stated in the printed report of the case, 119 La. 231, at page 233, 43 So. 1016, at page 1017, 11 L.R.A.(N.S.) 387, thus: “We have noted that the father and mother were married about two years after the birth of the decedent [illegitimate child]. Without objection, evidence was admitted, secondary in its nature, going to prove that he [the illegitimate child]
 
 *981
 
 was subsequently christened as their child.” The difference between that case and the one before us is that in that case the baptizing of the child formed no part of the ceremony in which the parents of the child were married; whereas, in the present case it is virtually admitted that the marriage and the baptism constituted one continuous ceremony.
 

 We come to the point, therefore, where we must either say that the acknowledgment of the illegitimate child in this case, in the ceremony in which the parents were married and the child was baptized, was an acknowledgment “by their contract of marriage itself,” or say that such an acknowledgment must be written in the marriage certificate and signed by the celebrant and by the parties to the marriage,, and by the three witnesses; which is the certificate provided for in article 105 of the Civil Code.
 

 Article 198 of the Civil Code does not, in terms, require that the acknowledgment by the “contract of marriage itself” shall be embodied in the marriage certificate and signed by the parties to the marriage. The corresponding article, 331, of the Code Civil of France, did, originally, require that such an acknowledgment should be written in the marriage’ certificate itself — “dans l’acte méme de célébration.” If the redactors of the Louisiana Code of 1825 had intended that the acknowledgment should be written in the marriage certificate, they would have copied article 331 of the Code of France, literally, instead of changing the language so as to read: “par leur contrat de mariage.” It is possible, of course, that the redactors of the Louisiana Code of 1825 did not intend to change the meaning of the law, when they substituted the word “par” for the word “dans.” But it is more probable that the redactors of the Louisiana Code of 1825, in substituting the word “par” for the word “dans,” acted deliberately, and with the intention of making the requirement less stringent than it was in France. The French word “dans” means “in”; whereas the French word “par,” according to Spiers and Surenne’s French Dictionary, has a variety of meanings, depending upon the context in which it is used. For example, “par” may mean “by,” or “through,” or “out of,” or “about,” or “during.” Therefore, when we consider that one of the two forms of acknowledgment prescribed by article 203 of the Civil Code, for the elevating of a child from the status of a bastard to that of a natural child, is that which is “made in the registering of the birth or baptism of such child,” it may well be said that an illegitimate child is formally acknowledged by the parents, for the purpose of legitimating the child “by their contract of marriage itself,” when the parents formally acknowledge the child
 
 during
 
 the ceremony in which both the marriage and the baptism take place. In the Succession of Hebert, 33 La.Ann. 1099, 1105, it was said:
 

 “The Code attaches to acts of baptism a high and valuable importance. They are legal evidence to prove the filiation of legitimate children, when kept agree
 
 *983
 
 ably to law, or to the usages of the country. R.C.C. 193 (212); 958 (952).
 

 “The Code expressly makes a ‘transcript,’ that is a copy, from the register, valid proof for 'that purpose. It authorizes acknowledgments of natural children to be made by such acts. R.C.C. 203 (221), 204 (222).”
 

 And maintaining, in that case, that the baptismal certificate was proof of a valid acknowledgment of the illegitimate child, under article 203 of the Civil Code, to elevate the child from the status of bastard to that of a natural child, the "court said:
 

 “It [the baptismal certificate] is not signed by the mother, but that is no objection. The act is drawn up as similar acts are, according to the usages and rites of the Catholic Church and of the country.”
 

 To say that the illegitimate child in this case was not legally acknowledged by his parents, “by their contract of marriage itself,” would be the same as to say that the acknowledgment was invalid because it was not embodied in the marriage certificate and signed by the parties to the marriage. The acknowledgment was embodied in the baptismal certificate — as much so as in the Succession of Hebert— and that is all that is required by the Code to convert a bastard into an acknowledged illegitimate child. According to the ruling in Landry v. American Creosote Works, the acknowledgment of the illegitimate child in this case would not have given to the marriage the effect of legitimating the child if the baptism had not been administered at the time of the marriage ceremony, and as a part of the ceremony in which both the marriage and the baptism took place. But, considering that the administering of the baptism, in which the parents formally acknowledged the child to be their illegitimate child, was a part of the ceremony in which the parents were married, we find ample authority for maintaining that the child was acknowledged
 
 by,
 
 or during, the marriage ceremony, and hence that the marriage had the effect of legitimating the child.
 

 As the other heirs of the grandparents of the plaintiffs consist of five sons, two daughters, and the legitimate children of a deceased daughter, the plaintiffs are entitled to one ninth of the estate.
 

 The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiffs’ father, now deceased, was a legitimated child, and that they, the plaintiffs, as his heirs and legal representatives, are entitled to one ninth of the estate of his parents. The defendants are to pay the costs of this suit. And the case is ordered remanded to the district court for such further proceedings as may be necessary, consistent with this decree.